NUMBER 13-07-0214-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

CITY OF MCALLEN, TEXAS Appellant,

 

v.
 


MCALLEN POLICE OFFICERS UNION 

AND MICHAEL ZELLERS, PRESIDENT, Appellees.

 


On appeal from the 398th District Court of Hidalgo County, Texas.


 


O P I N I O N



Before Chief Justice Valdez and Justices Rodriguez and Garza


Opinion by Chief Justice Valdez




 This matter is before the Court on an accelerated interlocutory appeal. Plaintiffs
below, McAllen Police Officers' Union and Michael Zellers, President, and plaintiff-intervenors, Cesar Gomez, individually and on behalf of the McAllen Firefighters
Association (collectively "plaintiffs"), filed an application for a temporary restraining order
and temporary injunction against the City of McAllen, Texas ("the City"), seeking to enjoin
the City from utilizing misleading and confusing ballot language in the May 12, 2007
election. The trial court granted the temporary injunction, and the City now appeals an
order denying its plea to the jurisdiction, signed by the trial court on March 27, 2007; as
well as the temporary injunction, signed by the trial court on March 29, 2007. We affirm.

 I. Background


 The Texas Local Government Code authorizes qualified voters of a municipality to
propose amendments to the City's charter. See Tex. Loc. Gov't Code Ann. § 9.004, 9.005
(Vernon 1999). Under this authority, approximately 3,200 registered voters in the City
signed a petition that proposed to amend the City's charter to provide, in relevant part, for
binding arbitration in the event of an impasse in the collective bargaining negotiations
between the City and the bargaining agents for the police and firefighters. The petition
reads as follows:

 I, a registered voter of the City of McAllen, pursuant to the provisions of
sections 9.004 and 9.005, Local Government Code of the State of Texas,
hereby petition the City Commission to submit the following proposed charter
amendment to the voters of the City of McAllen on May 12th, 2007:


 Article No. IV is amended to add Section No. 3 as follows:


 It shall be the policy of the City of McAllen to provide it's [sic] Firefighters and
Police Officers with compensation and other conditions of employment that
are substantially the same as compensation and conditions of employment
in other comparable cities in the State of Texas.


 Because of the essential and emergency nature of the pubic service
performed by Firefighters and Police Officers it is essential for the City of
McAllen to adopt a fair system of arbitration if the parties fail to agree on the
compensation and other conditions of employment during collective
bargaining negotiations.


 With the right to strike prohibited, to maintain the high morale of Firefighters
and Police Officers and efficient operation of the departments in which they
serve, arbitration must be expeditious, effective, and binding.


 In the event that the City of McAllen is unable to reach an agreement with the
Firefighters and /or Police Officers during collective bargaining negotiations
and the parties have been at impasse for at least 90 days, then the following
impasse procedure shall prevail:


 Either party to the dispute, after written notice to the other party containing
specifications of the issue or issues in dispute, may request arbitration. In
the event that one party makes a request for arbitration, then both parties
shall submit all issues in dispute to arbitration. The issues to be submitted
to arbitration shall be all matters which the parties have been unable to
resolve through collective bargaining. The arbitration ruling shall be final and
binding on both parties.


 Arbitration shall be conducted by the parties pursuant to the procedures,
duties, requirements and rights set forth in local government code, sections
174.153 through 174.164, except that local government code section
174.163 shall be specifically excluded and not apply herein. 


 In making its decision, the Arbitration panel may consider only the following:


 1) the requirements of section 174.021, Local Government Code[.]


 2) The total compensation, including wages and benefits, and conditions
of employment provided by the City of McAllen to the Firefighters
and/or Police Officers.


 3) The total compensation and terms and conditions of employment of
Firefighters and Police Officers in other comparable cities in the State
of Texas[.]


 4) The rate of increase or decrease in the cost of living for the McAllen
area determined by the Consumer Price Index for the period
beginning with the effective date of the current collective bargaining
agreement and ending with the most recent published report at the
time of commencement of the arbitration.


 5) Revenues available to the City of McAllen and the impact on the
Taxpayers of the City of McAllen.


Plaintiffs McAllen Police Officers' Union and Michael Zellers, President, submitted the
petitions to the City on March 5, 2007. 

 On March 12, 2007, the City certified the petitions as sufficient in number,
substance, and form to place the issue on the ballot for the May 12, 2007 election. The
City issued Ordinance 2007-24, which contains the proposition submitted by petition, and
proposed to place it on the ballot as Proposition Three, utilizing the following ballot
language: "Should the city charter be amended to require that outside arbitrators be the
final decision makers in certain labor contract issues affecting city employees and the city
budget rather than having the decision made by your elected mayor and city commission?"

 That same day, the City, on its own initiative, issued two other ordinances,
Ordinance 2007-22 and Ordinance 2007-23, also proposing to change the city charter. 
Ordinance 2007-22 provided for a vote for or against the following proposition:

 The board of commissioners shall from time to time by resolution provide for
regular meetings and for call[ed] meetings of said board; and shall provide
for the time and place of said meetings. Four (4) commissioners, or the
mayor and three (3) commissioners of said board, shall constitute a quorum
for the transaction of any and all business that may be brought before the
board; provided that no bonds may be issued nor no taxes levied except at
a regular meeting of the board attended by at least three (3) commissioners
and the mayor, or by four (4) commissioners without the mayor. All official
sessions of the board of commissioners, whether regular or called, shall be
open to the public.


This proposition was to be placed on the ballot as Proposition Two utilizing the following
language: "Should the city charter be amended to provide that a quorum of the Board of
Commissioners consists of four members?"

 Ordinance 2007-23 provides for a vote "for or against the following proposition:"

 Notwithstanding any other provisions of this charter, the City is prohibited
from utilizing binding arbitration, or any other similar process which delegates
the final decision making authority to an outside person or entity, in
determining the appropriate compensation, wages, benefits and/or any other
conditions of employment for City of McAllen employees, including but not
limited to Police Officers and/or Firefighters. The City shall have the
authority to use any appropriate non-binding alternative dispute resolution
proceeding, but the final decision to accept and/or reject any
recommendations resulting from such proceeding shall remain with the
elected city officials of the City of McAllen.


The proposition language to be placed on the official ballot, identified as Proposition One,
reads: "Should the city charter be amended to make sure that your elected mayor and city
commissioners keep the right to make final decisions on employee labor issues affecting
city budgets by prohibiting outside arbitration?" 

 On March 22, 2007, plaintiffs filed an application for temporary restraining order and
temporary injunction. Plaintiffs contended that the proposition language for the ballot
adopted by the City was at substantial variance from the language of the petitions and the
proposition set forth and described in the ordinance. Plaintiffs further contended that the
proposition language: (1) fails to describe the measure with such definiteness and
certainty that the voters are not misled; (2) fails to identify the measure and show its
character and purpose; (3) fails to utilize such language as to constitute a fair portrayal of
its chief features in words of plain meaning so that it can be understood by persons entitled
to vote; and (4) fails to adequately describe the proposed amendment to give fair notice
to the voter of average intelligence by directing him to the amendment so that he can
discern its identity and distinguish it from other propositions on the ballot.

 On March 23, Cesar Gomez, individually and on behalf of the McAllen Firefighters
Association, filed his petition in intervention also seeking to enjoin the City from proceeding
with the election using deceptive, misleading, and confusing ballot language. 

 On March 26, 2007, the City filed a plea to the jurisdiction, contending that the trial
court lacked jurisdiction to rule on the application because there was insufficient time to
implement a remedy without delaying the election. On March 27, 2007, the trial court
denied the plea.

 The trial court held hearings on the application on March 26 and March 27, 2007. 
On March 27, 2007, the trial court announced her ruling from the bench granting the
temporary injunction. On March 29, 2007, the trial court issued a written order finding that
plaintiffs had shown a "probable right and probable injury," and providing, in relevant part,
that the ballot propositions selected by the City on the proposed charter amendments
contained in Ordinances 2007-23 and 2007-24 were "materially misleading" as to the effect
of the passage of the proposed amendments:

 . . . Said provision ["Notwithstanding any other provision of this charter . . ."]
in the ordinance, and the absence of said language in the proposed
proposition, along with the presentment of both of these propositions could
conceivably result in both of these propositions being approved by the
voters, which could circumvent and nullify the will of the voters. Therefore,
the Court finds that these propositions as presented are materially
misleading, not so much in the words used, but in th effect that could result
from the voters not knowing the effect of their Yes or No vote.


 Further, the propositions are also misleading in that the voter is led to believe
that the Mayor and the City Commissioners would be the final decision-makers in bargaining impasses when in fact the Fire and Police Employee
Relations Act, Local Government Code Chapter 174, make arbitration
decisions appealable to court for judicial resolution under a set of guidelines.


 Further, both ballot propositions state that these propositions relate to all city
employees when in fact both proposed charter amendments apply only to
bargaining disputes involving firefighters and police officers.


 * * *


 Plaintiffs and Plaintiff-Intervenor will further be irreparably harmed if the City
is allowed to proceed with a charter amendment election using the ballot
language selected for Ordinance Nos. 2007-23 & 2007-24 because they are
on the ballot with an amendment proposed by Ordinance No. 2007-22. If the
amendment proposed in Ordinance No. 2007-22 is successful, it would
prevent a fair election on the other two proposed charter amendments for a
period of two years under the operation of Article XI, Sec. 5 of the Texas
Constitution, and the Plaintiffs and Plaintiff-Intervenor could not have an
opportunity for an election prior to May 2009.


The trial court enjoined the City from utilizing the ballot language proposed by the City for
Propositions One and Three and holding an election on the proposed charter amendments
using any ballots containing that language. The trial court further found that "time is of the
essence" and recommended that the parties "work toward a resolution of this matter prior
to the date of the scheduled election."

 On March 28, 2007,the City instructed the company preparing the ballots to remove
Propositions One and Three from the ballot. 

 On April 4, 2007, the City filed a notice of appeal regarding (1) the trial court's order
denying its plea to the jurisdiction, and (2) the temporary injunction. 

 On April 5, 2007, appellees, McAllen Police Officers' Union and Michael Zellers,
President, filed a motion for emergency relief asking this Court to rule on appellant's
appeal without the necessity of briefing and based on the sworn and uncontroverted copies
of the original papers filed with the trial court. On April 9, 2007, the Court granted
appellees' motion. On April 11, 2007, the City filed a response to the plaintiffs' motion for
emergency relief, addressing substantive issues pertaining to the appeal, along with a
sworn appendix. Accordingly, the Court is hearing this appeal without briefs and without
oral argument, based on sworn and uncontroverted copies of documents presented to the
Court by the parties. See Tex. R. App. P. 28.3. Given the exigent nature of this case, the
Court shortened relevant appellate time periods under the authority of the Texas Rules of
Appellate Procedure. See Tex. R. App. P. 2, 39.9. 

II. Plea to the Jurisdiction


 A plea to the jurisdiction is a dilatory plea, the purpose of which is to "defeat a cause
of action without regard to whether the claims asserted have merit." Bland Indep. Sch.
Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's
jurisdiction over the subject matter of a pleaded cause of action. Tex. Parks & Wildlife
Dep't v. Morris, 129 S.W.3d 804, 807 (Tex. App.-Corpus Christi 2004, no pet.). Whether
a trial court has subject matter jurisdiction is a question of law. Tex. Dep't of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Morris, 129 S.W.3d at 807. 
Therefore, we review a trial court's ruling on a plea to the jurisdiction de novo. Miranda,
133 S.W.3d at 226; Morris, 129 S.W.3d at 807.

 In its plea to the jurisdiction, the City contends that the trial court's jurisdiction over
a suit involving an election is strictly limited and depends on there being sufficient time to
implement a remedy without delaying the election. The City contends that any remedy in
the instant case would cause a delay in the election and would thus be beyond the trial
court's jurisdiction. According to the City, it had from the date of the hearing until March
28, or perhaps April 3, to obtain a judgment on the merits from the trial court and exhaust
its appellate remedies in the court of appeals and supreme court.

 The City correctly argues that our analysis of this issue is controlled by Blum v.
Lanier, 997 S.W.2d 259 (Tex. 1999). In Blum, the Texas Supreme Court considered (1)
whether a district court has jurisdiction to enjoin a city from using allegedly vague and
misleading language on the ballot describing the proposed amendment to the city charter
initiated by petition, and (2) whether a qualified voter who signs the petition that initiates
the election has standing to seek the injunction against the ballot proposition the city
drafted. See id. at 260. The court answered "yes" to both questions. Id. 

 According to the supreme court, an injunction that delays an election would be
improper, but an injunction that facilitates the elective process may be appropriate. See
id. at 263. "In short, if the matter is one that can be judicially resolved in time to correct
deficiencies in the ballot without delaying the election, then injunctive relief may provide a
remedy that cannot be adequately obtained through an election contest." Id. at 263-64. 
The court considered, and rejected, the possibility that an election contest occurring after
the election, could serve as an adequate remedy at law. Id. at 264. The Texas Supreme
Court thus held that a qualified voter who signs an initiative petition has standing to seek,
and the trial court has jurisdiction to issue, an injunction forbidding the City's use of a
misleading ballot proposition "so long as the injunction does not operate to delay or cancel
the called election." Id.

 In the instant case, the trial court entered its injunction orally on March 27, 2007,
and issued a written order on March 29, 2007. The injunction did not delay or cancel the
election. Even under the City's own estimation of the time required for printing ballots and
mailing them, there was sufficient time for the trial court to act without delay of the called
election. That is, according to the City, the ballots had to be mailed out by April 4, 2007. 
This allowed the City eight days to amend the ballot language and have the ballots printed
and ready for the May 12, 2007 election. 

 The City contends that "[w]hile the commission presumably could have decided to
adopt new language for the two propositions, it chose instead to continue to defend its
statutory right to choose the ballot language by appealing the order as it was authorized
by chapter 51 of the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code §
51.014(a)(4) & (8)." The City's argument highlights a tension apparent in the instant case
between the City's right to appeal and the trial court's authority to enter a temporary
injunction as a remedy for a misleading ballot proposition. The Texas Supreme Court has
authorized the use of a temporary injunction to remedy a misleading ballot proposition "so
long as the injunction does not operate to delay or cancel the called election." Blum, 997
S.W.2d at 264. 

 As noted above, we have taken appropriate measures in this case to ensure the
timely disposition of the City's interlocutory appeal, bearing in mind the exigent nature of
the case and the parties' respective rights to judicial review prior to the election. At the
present time, the trial court is stayed from all proceedings under Texas Civil Practice and
Remedies Code Section 51.014. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(b)
(Vernon Supp. 2006). The stay has precluded the trial court from providing any additional
remedy of any nature prior to the election, including a ruling on Plaintiffs' Emergency
Request for Declaratory Relief, Writ of Mandamus, and Attorneys Fees, which was filed
on April 4, 2007. Nevertheless, we do not agree that the trial court lacks jurisdiction. 

 Thus far, the trial court has not issued any relief that would delay the election. The
relief granted in the temporary injunction prohibited the use of the ballot language
proposed by the City. As noted above, the City has already had the language taken off the
ballot without delaying the election. Accordingly, there is no basis for concluding that the
relief granted by the trial court had the effect of delaying the election. See Blum, 997
S.W.2d at 264. 

 Given the foregoing, we conclude that the trial court properly denied the City's plea
to the jurisdiction.

III. Temporary Injunction


 The purpose of a temporary injunction is to preserve the status quo of the litigation's
subject matter pending a trial on the merits. Butnaru v. Ford Motor Co., 84 S.W.3d 198,
204 (Tex. 2002). A temporary injunction is an extraordinary remedy and does not issue
as a matter of right. Id. To obtain a temporary injunction, the applicant must plead and
prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought;
and (3) a probable, imminent, and irreparable injury in the interim. Id. An injury is
irreparable if the injured party cannot be adequately compensated in damages or if the
damages cannot be measured by any certain pecuniary standard. Id. The party seeking
the injunction bears the burden of proving each of these elements. Bridas Corp. v. Unocal
Corp., 16 S.W.3d 887, 890 (Tex. App.-Houston [14th Dist.] 2000, pet dism'd w.o.j.).

 The decision to grant or deny a temporary injunction is within the trial court's sound
discretion. Butnaru, 84 S.W.3d at 204. In deciding whether the trial court has abused its
discretion in denying or granting a temporary injunction, the reviewing court may neither
substitute its judgment for that of the trial court nor consider the merits of the underlying
lawsuit. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); Synergy Ctr., Ltd. v. Lone Star
Franchising, Inc., 63 S.W.3d 561, 564 (Tex. App.-Austin 2001, no pet.). Our review is
confined to the validity of the order that grants or denies the injunctive relief. Synergy Ctr.,
Ltd., 63 S.W.3d at 564. We review the evidence in the light most favorable to the order
and indulge all reasonable inferences in favor of the decision. EMSL Analytical, Inc. v.
Younker, 154 S.W.3d 693, 696 (Tex. App.-Houston [14th Dist.] 2004, no pet.); Universal
Health Servs., Inc. v. Thompson, 24 S.W.3d 570, 576 (Tex. App.-Austin 2000, no pet.). 
When, as here, the trial court does not make findings of fact or conclusions of law, we must
uphold the court's order on any legal theory supported by the record. Davis, 571 S.W.2d
at 862; EMSL Analytical, Inc., 154 S.W.3d at 696. The reviewing court "cannot reverse a
trial court's order if the trial court was presented with conflicting evidence and the record
includes evidence that reasonably supports the trial court's decision." Universal Health
Servs., 24 S.W.3d at 576.

 In its response to the application for a temporary injunction, the City contended that
the plaintiffs were not entitled to a temporary injunction because: (1) the relief sought
would destroy rather than preserve the status quo; (2) the plaintiffs do not have a probable
right to the relief they are seeking; and (3) the plaintiffs would not suffer irreparable harm. (1) 

 In the City's first argument against the temporary injunction, it contends that the
plaintiffs were not entitled to a temporary injunction because the relief sought would
destroy rather than preserve the status quo. 

 The "status quo" to be preserved by temporary injunction is the last actual,
peaceable, noncontested status which preceded the pending controversy. Transp. Co. of
Tex. v. Robertson Transports, Inc., 152 Tex. 551, 558, 261 S.W.2d 549, 554 (Tex. 1953). 
The status quo in this case was the status of the matter prior to the controversy at issue. 
That is, the status as it existed following the submission of the petition and prior to the
drafting of the ballot language by the City. If the City's ballot language created the status
quo, as the City contends, a plaintiff could never obtain temporary relief from invalid ballot
language before a trial on the merits could be had, and this result would be inconsistent
with the Texas Supreme court's analysis in Blum v. Lanier. See Blum, 997 S.W.2d at 263-64 (authorizing issuance of a temporary injunction to challenge ballot language so long as
the election is not delayed). 

 In its second argument, the City contends that the plaintiffs have not shown a
probable right to the relief sought. See Butnaru, 84 S.W.2d at 204. Specifically, the City
argues that it has broad discretion in the wording it chooses for the ballot language. 

 To establish a probable right to the relief sought, an applicant is required to allege
a cause of action and offer evidence that tends to support the right to recover on the
merits. See Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam); Dallas
Anesthesiology Assocs., P.A. v. Tex. Anesthesia Group, P.A., 190 S.W.3d 891, 896 (Tex.
App.-Dallas 2006, no pet.). An applicant is not required to show he will prevail at the final
trial because the ultimate merits of the case are not before the trial court. See Walling, 863
S.W.2d at 58; Dallas Anesthesiology Assocs., 190 S.W.3d at 896. A probable right to
recovery may be proven by alleging the existence of a right and presenting evidence
tending to show that right is being denied. Bureaucracy Online, Inc. v. Schiller, 145
S.W.3d 826, 829 (Tex. App.-Dallas 2004, no pet.).

 In the instant case, plaintiffs have a cause of action insofar as they are the signers
of the petition, and they have a justiciable interest in seeing that their legislation is
submitted to the people for a vote. See Blum, 997 S.W.2d at 262. 

 Although the petitioners draft the charter amendment, "the municipal authority
generally retains discretion to select the form of the ballot proposition that describes the
proposed amendment." Blum, 997 S.W.2d at 262. This is so where neither the petition
nor any statute, city charter provision, or ordinance prescribes the ballot language. Brown
v. Blum, 9 S.W.3d 840, 848 (Tex. App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.);
Bischoff v. City of Austin, 656 S.W.2d 209, 211-12 (Tex. App.-Austin 1983, writ ref'd
n.r.e.). Section 52.072(a) of the Election Code provides:

 Except as otherwise provided by law, the authority ordering the election shall
prescribe the wording of a proposition that is to appear on the ballot.


Tex. Elec. Code Ann. § 52.072(a) (Vernon 2003); see Blum, 997 S.W.2d at 262. The
Election Code defines a "proposition" as "the wording appearing on a ballot to identify a
measure." Tex. Elec. Code Ann. § 1.005(15) (Vernon 2003).

 The election authority's discretion under this statute is limited by the common law
requirement that the proposition describe the measure "with such definiteness and
certainty that the voters are not misled." Blum, 997 S.W.2d at 262; see Brown, 9 S.W.3d
at 847 (and cases cited therein). Ballot wording is sufficient if it identifies the measure and
shows its character and purpose. See Brown, 9 S.W.3d at 848. The ballot should contain
a description of the measure "in such language as to constitute a fair portrayal of [its] chief
features . . . in words of plain meaning, so that it can be understood by persons entitled to
vote." See Wright v. Bd. of Trs. of Tatum Indep. Sch. Dist., 520 S.W.2d 787, 792 (Tex. Civ.
App.-Tyler 1975, writ dism'd); see also Brown, 9 S.W.3d at 848. "A ballot adequately
describes a proposed amendment if it gives fair notice to the voter of average intelligence
by directing him to the amendment so that he can discern its identity and distinguish it from
other propositions on the ballot." Hardy v. Hannah, 849 S.W.2d 355, 358 (Tex.
App.-Austin, 1992, writ denied); see Brown, 9 S.W.3d at 848.

 We conclude, without making a determination on the merits, that the plaintiffs
established a probable right to relief. While the City retained discretion to prescribe the
wording of a proposition that is to appear on the ballot, that discretion is not absolute. At
the temporary injunction hearing, the trial court had before it evidence from which it may
have concluded that the propositions were misleading, both in and of themselves, and in
juxtaposition to one another. 

 In its third argument, the City contends that the plaintiffs failed to show irreparable
harm. However, injunctive relief may provide a remedy that cannot be adequately obtained
through an election contest. See Blum, 997 S.W.2d at 264. 

 A misleading ballot proposition that requires an election contest and a
second election delays the timely resolution of the proposed charter
amendment no less than, and perhaps even more than, an improper
injunction. Election results are often influenced by unique and complex
factors existing at a particular point in time, and those who petition for an
election may have strong reasons for desiring a particular election date. The
Local Government Code implicitly recognizes this interest by requiring
charter amendment elections to be set promptly. If defective wording can be
corrected through injunctive relief, a remedy will be provided that is not
available through a subsequent election contest. 


See id. (internal citations omitted). 

 Reviewing the evidence in the light most favorable to the temporary injunction, and
indulging all reasonable inferences in favor of the decision, we conclude that the trial court
did not abuse its discretion in granting the injunction. 

IV. Mootness


 The City contends that this matter is moot. If a case becomes moot, the parties lose
standing to maintain their claims. Williams v. Lara, 52 S.W.3d 171, 184 (Tex. 2001). 
Under the "capable of repetition, yet evading review" exception to the mootness doctrine,
a plaintiff must prove that: (1) the challenged action was too short in duration to be
litigated fully before the action ceased or expired; and (2) a reasonable expectation exists
that the same complaining party will be subjected to the same action again. Id. 

 We conclude that this matter falls within the "capable of repetition, yet evading
review" exception to the mootness doctrine. A repetition of the events in this case is
possible. Blum, 997 S.W.2d at 264 ("Because the City controls the proposition language
and to some extent may also dictate the amount of time the initiative sponsors will have
to seek judicial relief prior to the election, a repetition of the events in this case is
possible."). 

V. Conclusion


 The order of the trial court denying the City's plea to the jurisdiction and the order
granting the temporary injunction are AFFIRMED.


 _______________________

 ROGELIO VALDEZ,

 Chief Justice



Opinion delivered and filed 

this the 13th day of April, 2007. 

 


1. In a fourth argument in its response to the application for temporary injunction, the City contends that plaintiffs
did not have standing to challenge the language of proposition one. The City argues that "While a person who
signs the petition may have standing to challenge the language of a proposition drawn from the petition, no
such challenge may be brought to the language of other propositions, except in an election contest following
the election." The temporary injunction does not prohibit or enjoin the use of proposition one, accordingly, we
do not address this argument herein. See Tex. R. App. P. 47.1.